James P. WARD, III, Plaintiff,

v.

RIDLEY SCHOOL DISTRICT,
Defendant.

Civil Action No. 94–7480.

United States District Court,
E.D. Pennsylvania.

Oct. 4, 1996.

Shelley J. Michaels, Philadelphia, PA, for plaintiff.

Deborah J. Nathan, Michael I. Levin, Michael I. Levin and Associates, Willow Grove, PA, for defendant.

## *MEMORANDUM*

ROBERT F. KELLY, District Judge.

Plaintiff, James P. Ward, III, filed this action against his former employer, Defendant Ridley School District alleging that he was the victim of a hostile work environment created by the sexual harassment of two male co-workers. Presently before the Court is Defendant's Motion for Summary

Judgment on Plaintiff's remaining claims [1] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*[2] For the reasons that follow, Defendant's Motion will be granted.

## I. FACTS

Plaintiff, a mentally retarded male who suffers from a mild personality disorder and epilepsy, began working for Defendant in July of 1984 as a custodian. Beginning in February, 1992, Plaintiff alleges that he was subjected to both physical and sexual harassment by two male custodial co-workers, William West ("West") and James DePaola ("DePaola"). The alleged harassment consisted of one instance of having his head banged against a wall, repeated instances of being physically pushed up against a wall and punched in the chest and stomach, being threatened with a pocket knife on one occasion, and having his custodian cart overturned. Plaintiff also alleges that West exposed his anus and genital areas to him and solicited genital contact. Although Plaintiff alleges that the harassment began in February of 1992, he first brought the allegations to the attention of his supervisor on June 18, 1992.[3] On June 19, 1992, Plaintiff, for the first time, told his family that he had regularly been harassed by two co-workers since February, 1992 when West arrived at the high school. Plaintiff never returned to work after telling his family about the harassment he endured.

The decision by Plaintiff to finally disclose the harassment to his supervisor and family closely followed two "mooning" incidents by West. Dr. Jerry Lewis, the Director of Administrative Services for Ridley School District, first learned of one such incident by way of an anonymous phone call he received on June 22, 1992 where an unidentified male stated that one custodial employee had "mooned" another custodial employee.[4] Dr. Lewis immediately began an investigation and determined that West was the responsible party. West admitted to a "mooning" in the custodian's break room, which he stated was directed to DePaola. West falsely denied any other such occurrences.

After interviewing several other custodians, Dr. Lewis learned that West had in fact engaged in a second "mooning" incident in the cafeteria several days after the "mooning" in the break room. Dr. Lewis confronted West about the second incident and West stated that he did not mention the "mooning" in the cafeteria because he was afraid he would lose his job. On July 6, 1996, West was suspended from work for five days without pay. Plaintiff later filed a complaint with the Equal Employment Opportunity Office ("EEOC") and the Pennsylvania Human Relations Commission. Plaintiff received a Notice of Right to Sue from the EEOC on November 14, 1994. The instant action was filed on December 12, 1992.

## II. STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325,

---

1. Plaintiff's original Complaint consisted of nineteen counts. On October 17, 1995, Plaintiff voluntarily dismissed thirteen counts. Only Counts I and II, alleging a violation of Title VII, and Counts IX, X, XI and XII, alleging violations of the Pennsylvania Human Relations Act remain.

2. Since the Pennsylvania Human Relations Act has been interpreted and applied identically to Title VII, the Court's disposition of the Title VII claims will govern the PHRA claims. *King v. M.R. Brown, Inc.,* 911 F.Supp. 161, 166 n. 3 (E.D.Pa.1995) (citing *Allegheny Housing Rehabilitation Corp. v. Commonwealth of Pennsylvania,* 516 Pa. 124, 532 A.2d 315 (1987)).

3. The Plaintiff testified that he did not tell anyone about the alleged harassment sooner because he did not want to get anyone into trouble. (Ward Dep. at 61).

4. On the same day, Dr. Lewis received a call from the Ridley Township Police stating that it was the Plaintiff who was "mooned" by another employee.

106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 (3d Cir.1987).

## III. *DISCUSSION*

Defendant argues that summary judgment should be granted in its favor because Plaintiff has failed to establish that he suffered intentional discrimination "because of" his sex. Defendant also argues that Plaintiff has failed to establish the requisite existence of respondeat superior liability.

## A. INTENTIONAL DISCRIMINATION "BECAUSE OF" AN INDIVIDUAL'S SEX

■ Title VII prohibits discrimination "against any individual with respect to [that individual's] compensation, terms, conditions or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). The prohibition against sex discrimination also extends to "hostile work environment" harassment. *Meritor Savs. Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The Third Circuit has clearly set forth the requirements for a plaintiff to establish a claim of a hostile work environment:

> Five elements must converge to bring a successful claim for a sexually hostile work environment under Title VII; (1) the employees suffered intentional discrimination **because of** their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of

the same sex in that position; and (5) the existence of respondeat superior liability. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1485 (3d Cir.1990) (footnote and citations omitted) (emphasis added).

■ As an initial matter, Defendant maintains that summary judgment should be granted in its favor because same-sex sexual harassment is not actionable under Title VII.[5] Although the Third Circuit has yet to address this issue, this Court agrees with two recent decisions in this district which found that same-sex sexual harassment is indeed actionable under Title VII. *See Swage v. Inn Philadelphia,* No. 96–2380, 1996 WL 368316 (E.D.Pa. June 21, 1996) (involving male alleging sexual harassment by homosexual male supervisor); *King v. M.R. Brown, Inc.,* 911 F.Supp. 161 (E.D.Pa.1995) (involving female alleging sexual harassment by lesbian co-worker). However, it is still incumbent upon a plaintiff to establish that the harassment was "because of" that person's sex.

■ Defendant argues that the alleged harassment, however offensive, was not directed against Plaintiff "because of" his sex. In *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745 (4th Cir.1996), the court addressed the plaintiff's burden in a case alleging same-sex sexual harassment under Title VII:

> [W]hen a male employee seeks to prove that he has been sexually harassed by a person of the same sex, he carries the burden of proving that the harassment was directed against him "because of" his sex. The principle way in which this burden may be met is with proof that the harasser acted out of sexual attraction to the employee.
>
> .     .     .     .     .
>
> [C]onduct directed toward an employee of the same gender as the harasser can have sexual content or innuendo and, indeed, may be offensive. But unless such conduct is directed toward an employee "because of" his or her status as a man or woman, it does not implicate Title VII. I reject the

---

5. Defendant first raised this argument in a motion to dismiss which was denied by this Court on September 18, 1995.

notion that when a man ... uses sexually oriented gestures and language, or engages in sexually perverse activity to harass another man, Title VII automatically imposes liability.

*Id.* at 752. The court in *Hopkins* relied, in part, on the case of *McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191 (4th Cir.1996), which is factually similar to the present action.

In *McWilliams,* the plaintiff worked as an auto mechanic and had a learning disability which arrested his cognitive and emotional development. His co-workers subjected him to offensive conduct such as teasing him, asking about his sexual activities, and exposing themselves to him. Plaintiff was also physically assaulted—on one occasion he was blindfolded and forced to his knees while a co-worker placed his finger in plaintiff's mouth to simulate an oral sexual act. On another occasion, a co-worker placed a broomstick to plaintiff's anus while another co-worker exposed his genitals.

The court was obviously sickened by the type of offensive conduct alleged but nevertheless held that such conduct did not fall within the purview of Title VII:

> That this sort of conduct is utterly despicable by whomever experienced; that it may rise to levels that adversely affect the victim's work performance; and that no employer shall knowingly tolerate it are all undeniable propositions. But to interpret Title VII to reach that conduct when only heterosexual males are involved ... would be to extend this vital statute's protections beyond intentional discrimination "because of" the offended worker's "sex" to unmanageably broad protection of the sensibilities of workers simply "in matters of sex." [T]here perhaps "ought to be a law" against such puerile and repulsive workplace behavior even when it involves only heterosexual workers of the same sex, in order to protect the victims against its indignities and debilitations, but we conclude that Title VII "is not that law."

*McWilliams,* 72 F.3d at 1195–96 (citations omitted).

In the present action, Plaintiff is admittedly not homosexual. (Ward Dep. at 16). In addition, Plaintiff has not challenged the evidence submitted by Defendant which shows that neither West nor DePaola are homosexual. (West Aff. at ¶ 5; DePaola Aff. at ¶ 5; Aff. of Jeanne DePaola at ¶ 2; Dep. of Doris McGurk at p. 10). The court in *McWilliams* concluded that even if plaintiff was harassed because of his known or believed prudery, or shyness or other form of vulnerability, the harassment was not because of his sex. *McWilliams,* 72 F.3d at 1196. Plaintiff argues that this is a limited view and states that:

> [P]recisely due to these characteristics and his less than stereotypical manliness and worldly ways, as well as his obvious dearth of sexual experience and knowledge, he was the target of Mr. West's conduct. That is, based on Plaintiff's specific male attributes and qualities, he was harassed and sexually harassed "because of" his sex. This expanded view is the only just reading of Title VII, in order that all gender-based, egregious and abusive conduct is covered.

(Plaintiff's Memorandum in Opposition at 28).

This Court declines Plaintiff's invitation to interpret Title VII in such a way as to accommodate Plaintiff's claims. Unfortunately, the conduct alleged by Plaintiff in the present action is that type of "puerile and repulsive workplace behavior" found in *McWilliams,* but it is not behavior that occurred "because of" Plaintiff's sex. "To simply make all harassment with sexual overtones actionable without the existence of discrimination would be to read the word discrimination out of the statute." *Martin v. Norfolk S. Ry.,* 926 F.Supp. 1044, 1050 (N.D.Ala. 1996). Since Plaintiff has failed to establish that he suffered intentional discrimination "because of" his sex, summary judgment will be granted in favor of Defendant.

### B. RESPONDEAT SUPERIOR LIABILITY

Defendant also argues that summary judgment is warranted because Plaintiff has failed to establish another essential element of his claim-respondeat superior liability. In

814

cases of alleged harassment by co-workers, "liability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action." *Andrews*, 895 F.2d at 1486. In the instant case, Plaintiff testified that no one at his place of employment had actual knowledge about the problems he was experiencing until after he told his family, which was not until June 19, 1992.

In the absence of actual notice, an employer may nevertheless be liable if the employer had constructive notice of the harassment. An employer may be deemed to have constructive notice when the harassment is patently obvious. *See Stewart v. Weis Mkts., Inc.*, 890 F.Supp. 382, 391 (M.D.Pa.1995) (finding harassment was done with such disregard for who was in a position to observe it, that on-site management must have known it was occurring). Harassment which is apparent to all others in the workplace may also be sufficient to place the employer on notice. *See Smolsky v. Consolidated Rail Corp.*, 780 F.Supp. 283 (E.D.Pa. 1991). Here, Plaintiff acknowledges that he told no one about the alleged harassment until the day before he left employment with the high school. Furthermore, the affidavits submitted by Defendant show that his co-workers were unaware of any harassment by West.

In short, there is simply no evidence showing that the someone with authority to address Plaintiff's allegations was notified until the day before the Plaintiff's last day of work. As such, Defendant cannot be liable for instances of harassment when it had no notice or knowledge of the harassment, and was not given the opportunity to remedy the situation.

## IV. *CONCLUSION*

Based on the foregoing discussion, Defendant's Motion for Summary Judgment will be granted and judgment will be entered in favor of Defendant. Accordingly, I shall enter the following Order:

### *ORDER*

AND NOW, this 4th day of October, 1996, upon consideration of Defendant's Motion for Summary Judgment, and the response thereto, it is hereby ORDERED that said Motion is GRANTED. Judgment is hereby entered in favor of Defendant and against Plaintiff.